## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| WILLIAM S. FLETCHER, CHARLES A. PRATT, JUANITA W. WEST, CORA JEAN JECH, and BETTY WOODY, individually and as members of the OSAGE DEVELOPMENT COUNCIL, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 02-CV-427-GKF-FHM |
| THE UNITED STATES OF AMERICA; THE DEPARTMENT OF THE INTERIOR; KEN SALAZAR, Secretary of the Interior; THE BUREAU OF INDIAN AFFAIRS; Assistant Secretary of the Interior – Indian Affairs, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

### OPINION AND ORDER

This matter comes before the court on the defendants' Supplemental Motion to Dismiss [Motion to Dismiss First Amended Complaint][Docket No. 46]. Pursuant to Fed. R. Civ. P. 25(d), Ken Salazar is substituted for Dirk Kempthorne as Secretary of the Interior, effective January 20, 2009.

### I.  BACKGROUND

The plaintiffs are Osage Indians and are descendants of individuals listed on the tribal rolls at the time of the Osage Allotment Act of 1906, Pub. L. No. 59-321, 34 Stat. 539.  As the Tenth Circuit noted in a previous appeal of this action, "the 1906 act directed the preparation of a final membership roll of the Osage Tribe.  Each individual on the final roll received an interest in the tribal mineral estate.  The Osage Allotment Act further provided that the mineral estate would be managed by a tribal council . . ."  Section 4 of the 1906 Act states that "all funds belonging to the

Osage tribe, and all moneys due, and all moneys that may become due, or may hereafter be found to be due the said Osage tribe of Indians, shall be held in trust by the United States." 34 Stat. 539, 544 § 4.  Section 4 also provides that royalties received from oil, gas, coal, and other mineral leases shall be placed in the Treasury of the United States "to the credit of the members of the Osage tribe of Indians as other moneys of said tribe are to be deposited under the provisions of this act, and the same shall be distributed to the individual members of said Osage tribe according to the roll provided for herein . . . ."  34 Stat. 539, 544, § 4 (Second); First Amended Complaint [Docket No. 24], ¶ 3.

Plaintiffs allege that defendants have breached their trust obligations by improperly distributing royalty payments to persons who are not Osage Indians or heirs of Osage Indians.  *See* First Am. Compl. at ¶ 18.  Plaintiffs recognize that the 1906 Act has been amended to provide that a tribal member entitled to royalty payments may, with federal approval, devise his right to receive those royalties to a limited group of persons of Indian blood, spouses, and for a life estate interest to others.  *See* First Am. Compl. at ¶ 19. [1]

In their original complaint, plaintiffs alleged that "[s]ome of the Plaintiffs" were unable to participate in the government of the Osage Tribe because, at that time, members of the Tribe had to own an interest in an Osage mineral allotment before holding or voting for an elective office in the Tribe.[2]  Complaint, Docket No. 1, ¶ 3.  Their original complaint asserted four causes of action:  (1)

_____

[1]"Alienation of Osage headrights is severely restricted.  Headrights owned by non-Indians may be alienated, but only upon approval of the Secretary of the Interior and subject to the preferential right of the Osage Tribe to purchase them."  F. COHEN, HANDBOOK OF FEDERAL INDIAN LAW  791 (1982 ed.) (citing Act of Oct. 21, 1978, Pub. L. No. 95-496, § 8(a), 92 Stat. 1660, 1663).

[2]In 2004, Congress enacted an Act "to reaffirm the inherent sovereign rights of the Osage Tribe to determine its membership and form of government." Publ. L. No. 108-431, 118 Stat. 2609 (2004). Congress explicitly recognized that, until then, Osage Indians without a headright interest could not vote

a claim that defendants had deprived them of their right to vote and participate in tribal government; (2) a claim that defendants had breached their trust responsibilities by (a) eliminating the plaintiffs' right to participate in tribal elections, and (b) allowing mineral royalties to be alienated to persons not of Osage blood; (3) a Fifth Amendment takings claim; and (4) a claim that the federal regulations regarding the Osage Tribe violated (a) their right to participate in their government, and (b) the defendants' trust responsibilities.  Defendants moved to dismiss the complaint for failure to join the principal governing body of the Osage Tribe, the Osage Tribal Council, as a necessary and indispensable party under Fed. R. Civ. P. 19.  Defendants also sought dismissal for lack of subject matter jurisdiction. This Court granted the motion and dismissed the complaint.

On appeal, plaintiffs did not challenge the dismissal of those parts of their claims that concerned their voting rights.  *Fletcher v. United States*, 160 Fed. Apx. 792, 794 (10th Cir. 2005). They did, however, challenge the dismissal of their claims for breach of trust and taking of property insofar as those claims concerned the alleged wrongful transfer of mineral interests to non-Osages. The Court of Appeals determined that the breach of trust and takings claims did not seek "money damages" under 5 U.S.C. § 702, and as a result, this district court has jurisdiction over those claims. However, because this court had not determined whether the Osage Tribal Council is a necessary and indispensable party[3] with regard to the breach of trust and takings claims, the Circuit remanded

---

in Osage government elections and were ineligible to seek tribal office as a matter of Federal law. Congress reaffirmed "the inherent sovereign right of the Osage Tribe to determine its own membership, provided that the rights of any person to Osage mineral estate shares are not diminished thereby."  Pub. L. No. 108-431 (b)(1).  Congress also affirmed the sovereign right of the Osage Tribe to determine its own form of government.  In May, 2006, the Tribe adopted a new "Constitution of the Osage Nation" which expanded voting rights in Article XIII thereof.

[3]The text of Rule 19 of the Federal Rules of Civil Procedure has changed since the Court of Appeals' opinion.  The word "required" replaced the word "necessary" in subparagraph (a).  In addition, the word "indispensable" is deleted from the current text.  The Rules Committee advised that the changes

the case to this court to undertake a Rule 19 analysis.  *Id.* at 797.

Following remand, plaintiffs filed a First Amended Complaint in which they assert three causes of action:  (1) breach of federal trust responsibilities by improperly distributing trust assets and failing to account to plaintiffs for all funds held in the trust; (2) deprivation of property in violation of the Fifth Amendment by failing to properly manage the Tribe's trust assets and by distributing royalties to persons allegedly not entitled to receive them; and (3) violation of plaintiffs' rights, including those set forth in 25 U.S.C. § 4011.  *See* First Am. Compl. at, ¶¶ 21-35.  Plaintiffs bring the First Amended Complaint as a putative class action on behalf of "all Osage Indians who lawfully receive distributions of trust property from the Osage Mineral Estate."  Plaintiffs seek an accounting of royalty payments distributed from the Osage Mineral Estate, an order declaring that the 1906 act has been violated by distributing royalty payments to persons who are not Osage by blood, a reformation of the plaintiffs' and class members' trust funds relating to the royalty payments found to be due and owing to them,[4] and an order compelling the defendants to prospectively distribute trust property only to Osage Indians.

---

were stylistic only, and the U.S. Supreme Court agrees.  *Republic of the Philippines v. Pimentel*, — U.S. —, 128 S.Ct. 2180, 2184 (2008).  The court occasionally uses the old terms for the sake of convenience, but uses the present version of Rule 19.

[4]At oral argument before the Tenth Circuit, plaintiffs' counsel "explained that his clients did not seek the payment of royalties that had been withheld in the past.  Instead, he explained, the plaintiffs sought an order directing the defendants to comply with the requirements of the 1906 act from the date of the filing of the complaint in this case.  The prospective nature of the relief sought by the plaintiffs further supports their argument that they have not sought 'money damages.'  *See United States v. Testan*, 424 U.S. 392, 403 (1976)."  *Fletcher v. U.S.*, 160 Fed.Appx. 792, 797 (10th Cir. 2005).  In *Testan*, the Supreme Court distinguished "between prospective reclassification, on the one hand, and retroactive reclassification resulting in money damages, on the other."

## II.  MOTION TO DISMISS

Defendants seek dismissal of plaintiffs' First Amended Complaint on the following grounds: (a) failure to join other indispensable parties, including the Osage Nation[5] and owners of Osage headrights;[6] (b) lack of jurisdiction for failure to comply with the final agency action prerequisites to judicial review under the Administrative Procedure Act, 5 U.S.C. § 701; and (c) failure to challenge an actionable final agency action within the statute of limitations established in 28 U.S.C. § 2401.

The court first addresses the issues of whether non-Osage headright owners and the Osage Minerals Council[7] are required and indispensable parties under Fed. R. Civ. P. 19.

Rule 19 provides a three-step process for determining whether an action should be dismissed for failure to join a purportedly indispensable party.  *Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 997 (10th Cir. 2001).  *First*, the court must determine whether the absent person is "required." An absent person must be joined if:

> (1) ***Required Party.***  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, the court cannot accord  complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

---

[5]Article I of the new Constitution of the Osage Nation provides that "[t]his tribe shall hereafter be referred to as The Osage Nation, formerly known as the Osage Tribe of Indians of Oklahoma."  The court therefore will refer to the tribe as the Osage Nation.

[6] Section 4 royalty recipients are alternatively referenced herein as Osage headright owners.  A headright is the right to receive a quarterly distribution of funds derived from the Osage Mineral Estate.

[7]Article XV, Section 3 of the Constitution of the Osage Nation provides that "[t]he right to income from mineral royalties shall be respected and protected by the Osage Nation through the Osage Minerals Council formerly known as the Osage Tribal Council and composed of eight (8) members elected by the mineral royalty interest holders."

       (i) as a practical matter impair or impede the person's ability to protect that interest; or

       (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  "There is no precise formula for determining whether a particular nonparty must be joined under Rule 19(a).  The decision has to be made in terms of the general policies of avoiding multiple litigation, providing the parties with complete and effective relief in a single action, and protecting the absent persons from the possible prejudicial effect of deciding the case without them." *Knutzen v. Eben Ezer Lutheran Hous. Ctr.*, 815 F.2d 1343, 1356 (10th Cir. 1987) (quoting 7 C. WRIGHT, A. MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1604, p. 40 (1986)).

      *Second*, if the absent person is required, the court must determine whether joinder is "feasible."  Fed. R. Civ. P. 19(b).

      *Third*, if a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.  *Id*.  The factors for the court to consider include:

      (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

      (2) the extent to which any prejudice could be lessened or avoided by:

        (A) protective provisions in the judgment;

        (B) shaping the relief; or

        (C) other measures;

      (3) whether a judgment rendered in the person's absence would be adequate; and

      (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.*

## A.  Required Parties

Plaintiffs seek to strip the right to receive a quarterly distribution of Osage trust income from the approximately twenty-five percent (25%) of headright owners who are non-Osage.  A headright, as an interest in unaccrued royalties from mineral interests, is an interest in real property.  *Estate of Shelton v. Okla. Tax Comm'n*, 544 P.2d 495, 497-98 (Okla. 1975).  If an action would terminate a royalty holder's interest in property, such a party is a necessary and indispensable party.  7 WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE § 1621 (2006).  *See also Kansas City Royalty Co. v. Thoroughbred Assocs., L.L.C.*, 215 F.R.D. 628, 635-36 (D. Kan. 2003).  The non-Osage headright owners are so situated that disposing of the action in their absence would as a practical matter impede their abilities to protect their interests.  This court therefore concludes that the non-Osage headright owners are required parties to this action.

The Osage Nation claims an interest as the beneficial owner of the Osage Mineral Estate. It also claims an interest as the direct trust beneficiary to the funds within the tribal trust account established by the 1906 act from which the quarterly headrights payments are made.  These interests are separate and distinct from the interest it has as the holder of headrights.[8]

In recent federal litigation, the Osage Nation has actively asserted its interest as the direct trust beneficiary of funds within the tribal trust account.  The Osage Nation is currently the plaintiff in two federal lawsuits in which it claims breaches of fiduciary duty by the United States in the alleged mismanagement of the tribal trust fund and seeks an accounting.  The lawsuits are as follows:

_____

[8]Plaintiffs state on page 16 of 38 of their response brief that the Osage Nation holds two headrights.

*"Osage I"* (Court of Federal Claims)

On March 31, 2000, the Osage Nation filed a complaint against the United States in the Court of Federal Claims for breach of fiduciary duty in the mismanagement of tribal trust funds and for failure to account. *See* Complaint, ¶ 4, *Osage Nation v. United States*, No. 00-cv-169 (Fed. Cl.) (hereafter "*Osage I*"), attached as Exhibit 4 to Defendants' Memorandum in Support of Supplemental Motion to Dismiss, Docket No. 47-5.

The United States moved to dismiss the Osage Nation's claims for lack of subject matter jurisdiction, arguing the Osage Nation had no standing to bring a claim for the approximately 98.75% of headright interests it does not own. The United States argued that the headright holders, not the Osage Nation, suffer any damages that result from the mismanagement of mineral royalties because, as required by statute, the funds are ultimately distributed to those individuals. *Osage Nation v. United States*, 57 Fed. Cl. 392, 394 ( 2003). The Osage Nation contended that it, not the headright holders, is the direct trust beneficiary, and that it had "suffered concrete injury for all mismanaged funds paid to the Tribe's trust accounts." *Id.* at 394-95.

The Court of Federal Claims agreed with the Osage Nation. The court explained that Section 4 of the 1906 Act creates a trust fund for the Tribe[9] and obligates the United States to hold mineral royalties in trust for members of the Osage tribe as shown by the authorized roll of membership, or to their heirs. *Id.* (citing 34 Stat. 539, 544 §§ 4(1) and 4(2)). The mineral royalties are deposited first in the tribal trust fund account, where they remain for "approximately one calendar quarter"

---

[9]The 1906 act provides in pertinent part that "[T]he royalty received from oil, gas, coal and other mineral leases . . . shall be placed in the Treasury of the United States to the credit of the members of the Osage Tribe of Indians **as other moneys of said tribe are to be deposited under the provisions of this act** . . . ." Section 4(Second), Act of June 28, 1906, Pub. L. No. 59-318, 34 Stat. 539, 544 (emphasis added). The Osage Nation took the position that Osage minerals income is Osage tribal trust income before it is distributed to the headright holders. See Document No. 47-6, page 4 of 16.

before being distributed to the headright owners.  *Id*.  The funds distributed to the headright owners from the tribal trust fund are "net of a small portion retained for the Osage Tribal operations and a portion paid for the Oklahoma gross receipts tax." *Id*.  The determination of what amount is owed to each headright holder takes place while the funds are in the tribal trust fund.  *Id*.

The court found "that, under the terms of the 1906 Act relating to the tribal trust fund, there [was] sufficient injury to the Tribe to establish standing." *Id*.  Although the Osage Nation has no interest or claim to funds once they are distributed to the headright owners, the court found that **the Osage Nation has both an interest in and a claim to the funds when those funds are within the tribal trust account established by the 1906 Act**. *Id*.  The court therefore denied the government's motion to dismiss as to standing.[10]

The court noted, however, "[i]mportantly, the alleged mismanagement of the mineral royalties is described as taking place when the funds were within the tribal trust fund. . . . The mismanagement is not alleged to take place at the point of distribution of the funds to the individual headright holders."  In the instant case, the government's wrongdoing is alleged to have taken place at the point of distribution of the funds to the headright owners.

---

[10] Two years later, on September 14, 2005, the court consolidated *Osage I* with a case previously filed in that court – *Osage Tribe of Indians of Oklahoma v. United States of America*, No. 99-cv-550 (Fed. Cl., filed August 2, 1999).  The court designated the earlier-filed suit as the lead case.  After the cases were consolidated, the Osage Nation's claims were divided into two tranches, with the first tranche ("Tranche One") encompassing certain trust fund mismanagement claims.  In September, 2006, the court issued an opinion finding liability in some of the Tranche One claims.  *Osage Tribe of Indians of Okla. v. United States*, 72 Fed. Cl. 629, 671 (2006).   In February, 2007, the court issued an opinion regarding the calculation of damages for the government's liability regarding the Nation's Tranche One claims.  *Osage Tribe of Indians of Okla. v. United States*, 75 Fed. Cl. 462 (2007).   It appears that Tranche Two claims have not been tried or otherwise resolved.  The parties agreed that consideration of "alleged breaches by the government of any fiduciary duty in regard to the treatment of Osage trust funds that have been segregated for disbursement" will be considered under Tranche Two of the case.  72 Fed. Cl. 629, 631, n. 3 (2006).  The Osage Nation recently filed a motion for summary judgment on February 25, 2009.

*"Osage II" (U.S. District Court for the District of Columbia)*

In February, 2004, the Osage Nation filed a separate declaratory judgment action against the United States in the U.S. District Court for the District of Columbia – *Osage Tribe of Indians of Oklahoma v. United States of America, et al.*, No. 04-CV-238 (D.D.C.) (hereafter "*Osage II*"). In *Osage II*, the Osage Nation seeks a declaratory judgment delineating the trust duties of the United States to the Osage Nation and declaring the failure of the United States to fulfill those trust duties, including the failure to provide the Nation with an accounting of trust assets at regular intervals. The Osage Nation also seeks an injunction requiring the United States to fulfill its trust duties.  A status report filed in that case reveals that "[b]oth parties continue to agree that this case should be stayed until resolution of the Osage Nation's previously filed case for monetary relief in the United States Court of Federal Claims, [*Osage I*]." (*See* Status Report filed October 20, 2008, D.D.C. Case No. 04-CV-283).

Defendants argue that the interests the Osage Nation asserts in its two pending cases against the United States demonstrate that the Osage Nation must be joined as a party to this action under Rule 19.   This court disagrees.  Although the Court of Federal Claims determined that the Osage Nation had standing to bring claims for mismanagement of the tribal trust account because the tribe had an interest in and a claim to the funds "when those funds are within the tribal trust account," the court was careful to note that the tribe was not alleging mismanagement "at the point of distribution of the funds to the individual headright owners."  In other words, the Osage Nation's interest in the tribal trust funds ends at the at the point of distribution, except to the extent that it owns headrights like other headright holders.  The claims in this case focus on headright distributions only, not the

10

Osage Nation tribal trust fund.[11]  To the extent the Osage Nation has an interest as a headright holder

in the distribution of funds, its interests are aligned with those of the plaintiffs.   And although the

Court of Federal Claims found that the determination of what amount is owed to each headright

owner takes place while the funds are in the tribal trust fund, there is no indication that the Osage

Nation or its Minerals Council participates in any way in that determination.  In sum, based upon

the briefs thus far presented to this court, the Osage Nation does not appear to claim an interest

relating to the subject of the action such that it is a "required party under Rule 19(a).

### B.  Feasibility of Joinder

Based upon the briefs filed with the court, there is no reason to believe that the joinder of the

non-Osage headright owners is not feasible.  Plaintiffs shall be ordered to make all such persons

parties to this action and seek to effect service of process upon them.

In their response to the motion to dismiss, plaintiffs sought leave to file a Second Amended

Complaint to add the non-Osages in the event this court found them to be required parties.  Plaintiffs

are granted leave to do so within fifteen (15) days hereof.

### C.  Jurisdiction

In their third count, plaintiffs complain of  "administrative action not in accordance with law

and short of the plaintiffs' constitutional rights."   Defendants contend that it is impossible to discern

from the face of the First Amended Complaint the specific agency actions and/or inactions, whether

final or not, the plaintiffs challenge.  The court concurs.  Plaintiffs are hereby directed to identify

---

[11]On September 21, 2006, Court of Federal Claims entered an order finding that the Osage Tribe
was entitled to compensation for six (6) separate breaches of defendant's fiduciary duties.  Each of those
breaches reduced the amount of money that ought to have been deposited into the Osage tribal trust fund.
The court did not address any issues relating to improper disbursements from that fund to owners of
headrights.

with specificity the challenged agency action, actions, or inactions in their Second Amended Complaint.

### D.  Statute of Limitations

Until such time as plaintiffs specifically identify the agency actions or inactions they challenge, the court cannot conclusively determine whether the complaint has been filed within the applicable period of limitations.  This ground for dismissal is denied without prejudice.

**WHEREFORE**, Ken Salazar is substituted for Dirk Kempthorne as Secretary of the Interior, effective January 20, 2009; defendants' Supplemental Motion to Dismiss [Docket No. 46] is granted in part and denied in part; and plaintiffs are granted leave to file, within fifteen days hereof, a Second Amended Complaint adding all non-Osage headright owners as defendants to the action and identifying with specificity the challenged agency action and/or inactions.

**IT IS SO ORDERED** this 31st day of March, 2009.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma

12