IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLIAM S. FLETCHER, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 02-CV-427-GKF-FHM |
| ) | |
| THE UNITED STATES OF AMERICA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

This matter comes before the court on the Motion to Dismiss plaintiffs' Third Amended Complaint, filed by defendants the United States of America, the Department of the Interior, Kenneth Salazar in his official capacity as Secretary of the Interior, the Bureau of Indian Affairs, and Larry EchoHawk in his official capacity as Assistant Secretary of the Interior–Indian Affairs (collectively, the "Federal Defendants"). For the reasons set forth below, the Motion to Dismiss [Dkt. #1126] is granted.

**I. Procedural History**

Plaintiffs filed this case on May 31, 2002. Their complaint asserted four causes of action: (1) a claim that the Federal Defendants violated their right to political association and participation in the Osage government; (2) a claim that the Federal Defendants breached their trust responsibilities by (a) eliminating the plaintiffs' right to participate or vote in Osage tribal elections, and (b) allowing mineral royalties to be alienated to persons and entities not of Osage blood; (3) a Fifth Amendment takings claim; and (4) a claim that the federal regulations

regarding the Osage Tribe violated their right to participate in their government and the defendants' trust responsibilities.

The Federal Defendants moved to dismiss the complaint for failure to join the principal governing body of the Osage Tribe,[1] the Osage Tribal Council, as a necessary and indispensable party. The Court granted the motion and dismissed the complaint. Plaintiffs appealed, but during the appeal, Congress passed the Reaffirmation of Certain Rights of the Osage Tribe, Public Law 108-431, 118 Stat. 2609. That statute maintains the system for assigning mineral interests but granted the Osage Tribe the right to determine membership for other purposes. Accordingly, the plaintiffs obtained their first request—that they obtain the right to participate in the affairs of the Osage Nation as members. The Tenth Circuit held that the district court had jurisdiction over plaintiffs' breach of trust and takings claims for violation of a statutory duty to pay royalties only to tribal members, as plaintiffs did not seek "money damages" under 5 U.S.C. §702. The panel vacated the dismissal and remanded to determine whether the Osage Tribal Council was a necessary and indispensable party with regard to the breach of trust and takings claims.

On remand, the plaintiffs filed a First Amended Complaint. Federal Defendants moved to dismiss on the following grounds: (a) failure to join other indispensable parties, including the Osage Nation and non-Osage owners of headrights[2]; (b) lack of jurisdiction for failure to comply with the final agency action prerequisites to judicial review under the Administrative Procedure Act, 5 U.S.C. § 701; and (c) failure to challenge an actionable final agency action within the applicable statute of limitations. The Court granted the motion in part and denied it in part,

---

[1] At the time, the tribe was known as the Osage Tribe. Since then, it adopted a new Constitution and is now known as the Osage Nation.

[2] A headright is statutorily defined as "any right of any person to share in any royalties, rents, sales, or bonuses arising from the Osage mineral estate." Pub. L. No. 98-605, § 11(2), 98 Stat. 3163 (the "1984 Act"); *Shelton's Estate v. Okla. Tax Comm'n*, 544 P.2d 495, 497 (10th Cir. 1975) ("headrights are interests in unaccrued royalties arising from mineral interests.").

holding that: (a) the Osage Nation was not a required party under Rule 19(a); (b) non-Osage headright owners were required parties because plaintiffs sought to terminate their headright interests in royalty income; and (c) it was impossible to discern from the face of the First Amended Complaint the specific agency actions and/or inactions the plaintiffs were challenging. The Court directed plaintiffs to file a Second Amended Complaint adding all non-Osage headright owners as defendants and identifying with specificity the challenged agency actions and/or inactions.

Plaintiffs filed their Second Amended Complaint, which joined approximately 1,700 additional defendants[3] to the lawsuit. However, because plaintiffs again failed to specify the agency actions being challenged, the Court directed plaintiffs to file yet another amended complaint. [Dkt. #213 & #231 at pp. 16, 27, 48]. Plaintiffs filed their Third Amended Complaint on May 6, 2010. [Dkt. #985]. Plaintiffs also filed a Motion to Certify a plaintiffs' class, and a group of defendants filed a Motion to Certify Class of Defendants on Limited Issues and for Appointment of Class Counsel.

Many of the non-Osage headright owner defendants filed motions to dismiss. In an Opinion and Order filed March 31, 2011 [Dkt. #1122], the Court granted the Motion to Dismiss filed by defendant Ben T. Benedum for failure of the Third Amended Complaint to state a claim upon which relief can be granted. The Court concluded that Congress has always permitted non-Indian ownership of headrights, and therefore plaintiffs are mistaken as a matter of law when they contend that a non-Indian cannot hold legal or equitable title. In a subsequent order, the Court dismissed the remaining 1,700 non-Osage headright owners for failure to state a claim

---

[3] The 1,700 defendant non-Osage headright owners included churches, universities, charities, and foundations, as well as individuals.

upon which relief can be granted. [Dkt. #1143]. In addition, the Court held they were not required parties pursuant to Rule 19.

## II.  Historical Background

In 1872, Congress established a reservation of approximately one and a half million acres for the Osage Tribe of Indians in north central Indian Territory. *See* Act of June 5, 1872, ch. 310, 17 Stat. 228 (An Act to Confirm to the Great and Little Osage Indians a Reservation in the Indian Territory). The first oil and gas lease of the reservation was made in 1896, followed by substantial discoveries of oil and gas in 1904 and 1905. COHEN'S HANDBOOK OF FEDERAL INDIAN LAW § 4.07[1][d][ii], p. 311 (2005 ed.). "The Osage Nation quickly accumulated a large tribal trust fund in the Treasury from oil and gas leases, sales of townsite lots, permit taxes, and sale of an earlier tribal reservation in Kansas."  *Id.* (citing *McCurdy v. U.S.*, 246 U.S. 263 (1918)). Tribal wealth made the Osages targets of various forms of fraud and overreaching. *Id.*

In 1906, Congress passed the Osage Allotment Act in an attempt to individualize much of the Osage tribal property and to provide some protection for tribal members. *See* Act of June 28, 1906, ch. 3572, 34 Stat. 539 (An Act for the Division of the Lands and Funds of the Osage Indians in Oklahoma Territory and for Other Purposes) (the "1906 Act"). The 1906 Act directed the preparation of a tribal membership roll composed of persons whose names were on the roll maintained by the United States Indian agent at the Osage Agency, as it existed on January 1, 1906, and their children born by July 1, 1907. *See* 1906 Act, § 1. The mineral estate underlying the Osage lands was "reserved to the Osage tribe." 1906 Act, § 3. The royalties received from the mineral estate, less certain amounts retained for tribal purposes, is paid per capita on a quarterly basis to the 2,229 persons on the tribal roll, their heirs, devisees, and assigns. *See* 1906

Act, § 4.  Most persons of Osage Indian ancestry own no headrights, and thus receive no royalty income.  COHEN, p. 313.  Some persons own more than one headright, or own fractional shares of headrights, and some headrights are owned by non-Osages.  *Id.*  The trust period was originally set at twenty-five years, but has been extended several times.  In 1978, Congress extended the tribal trust "in perpetuity" and severly limited succession to headrights by non-Indians.  *See* Pub. L. No. 95-496, §§ 2(a), 5(c), and 7, 92 Stat. 1660 (1978).

### III. The Third Amended Complaint

Plaintiffs allege the Federal Defendants have breached their trust obligations "by failing to distribute Osage mineral royalties *only* to persons who are Osage Indians by blood, and those who may by statute be allowed to receive distributions of trust property."  Third Amended Complaint, ¶ 3 (emphasis in original).  Plaintiffs "make no claim against the Osage Nation or the Osage Mineral Estate itself; nor is there any dispute regarding the amounts which the Osage Nation has obtained from the Osage Mineral Estate.  Instead, the Plaintiffs' claims relate to the Federal Defendants' SECTION 4 ROYALTY PAYMENTS made during the pendency of this litigation, and those to be made in the future."  Third Amended Complaint, ¶ 30.

The Third Amended Complaint asserts three causes of action.  In their First Claim for Relief – Breach of the Federal Trust Responsibility – plaintiffs allege the Federal Defendants have breached their trust obligations by improperly distributing trust assets to persons who are not Osage Indians or their lawful heirs, and by failing to account to plaintiffs for all funds held in trust, including all royalty distributions.  In their Second Claim for Relief – entitled Failure to Account and Deprivation of Property – plaintiffs allege that, because the Federal Defendants have allowed royalty payments to be distributed to non-Osage persons, and because the Federal

Defendants have failed to account for and audit their actions, the plaintiffs have been deprived of property in violation of the Fifth Amendment. In their Third Claim for Relief – entitled Administrative Action Not in Accordance with Law and Violative or in Contravention of the Plaintiffs' Rights – plaintiffs allege, *upon information and belief*, that the Federal Defendants have taken administrative actions, or have failed to take action, in ways that are not in accordance with law, including: (a) approving "family settlement agreements" in the course of contested probates contrary to the explicit directives in Osage Indian wills, which has resulted in the alienation of Section 4 royalty interests in favor of non-Indians and the diminishment of the Osage mineral estate; (b) facilitating and encouraging the "legal" adoption of adult non-Indians by Osage Indians as a means of ostensibly complying with the 1978 Act and its explicit prohibitions against alienation to non-Indians; (c) permitting the sale of Section 4 Royalty Interests by non-Indians in derogation of the right of repurchase specifically reserved to Osage remaindermen of the original allottees by the 1978 Act; (d) making quarterly Section 4 royalty payments in violation of the law; and (e) refusing "to provide the accounting and audits required by law." Third Amended Complaint, ¶ 65.

Each of plaintiffs' three claims for relief contain two central elements: First, that the Federal Defendants have improperly paid royalties to non-Osage persons and entities, and second, that the Federal Defendants have failed to provide a required accounting and audits.

Plaintiffs seek the following relief: (1) an order compelling the Federal Defendants to provide an accounting and audit of the Section 4 Royalty Payments distributed from the Osage Mineral Estate "showing the amounts actually paid to each person and the basis for each payment;" (2) an order requiring that the accounting and audit "determine whether Section 4 Royalty Payments distributed from the Osage Mineral Estate have been distributed only to Osage

- 6 -

Indians (and their heirs);" (3) a reformation of the Plaintiffs and class members' entitlement to Section 4 royalty payments; and (4) an order compelling the Federal Defendants to prospectively distribute the Section 4 royalty payments only to Osage Indians and their heirs. *Id.* at pp. 85-86.

### IV.  The Motion to Dismiss

The Federal Defendants seek dismissal on the following grounds:

First, they contend the parts of the Third Amended Complaint based upon plaintiffs' "overarching legal argument" that a non-Osage cannot hold legal or equitable title to a headright should be dismissed for (a) failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6); (b) lack of subject matter jurisdiction pursuant to Rule 12(b)(1); and (c) failure to obey an order for more definite statement pursuant to Rule 12(e).

Second, the Federal Defendants contend that the portions of the Third Amended Complaint claiming the right to an accounting should be dismissed because (a) there is no trust relationship between the Federal Defendants and headright owners; and (b) the statutes upon which plaintiffs rely do not afford the plaintiffs a right to an accounting.

### V.  The Allegations of Improper Distributions to Non-Osage Headright Owners

A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plausibility requirement does "not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id.* at 556.  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Id.* at 555 (citations omitted). The court must determine "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007).

In an Opinion and Order dated March 31, 2011 (Dkt. #1122) and an Order dated May 16, 2011 (Dkt. #1143), this court rejected plaintiffs' "overarching legal argument" that the Osage Allotment Act (as amended) does not permit a non-Osage person or entity the right to receive quarterly income payments from the Osage mineral estate. Plaintiffs have failed to plead any specific facts supporting their allegation that any specific headright was transferred illegally. The claims as alleged are merely speculative. The plaintiffs' allegations against the Federal Defendants for improper distribution to non-Osage headright owners, contained in each of plaintiffs' claims for relief, must be dismissed without prejudice for failure to state a claim upon which relief can be granted.

In the alternative, the portions of plaintiff's Third Claim for Relief alleging administrative action not in accordance with law in connection with permitting royalty payments to non-Indians must be dismissed. Plaintiffs who rely on the APA for jurisdiction must "satisfy the 'statutory standing' requirements of the APA." *Colorado Farm Bureau v. U.S. Forest Serv.*, 220 F.3d 1171, 1173 (10th Cir. 2000). The plaintiffs "have the burden of identifying specific federal conduct and explaining how it is 'final agency action,'" which is defined as an "agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Id.* (citing 5 U.S.C. § 551(13)). "[W]here an agency is under an unequivocal statutory duty to act, failure so to act constitutes, in effect, an affirmative act that triggers 'final agency action' review." *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001). Plaintiffs may demonstrate a failure to act if they can show "that an agency failed to take a *discrete* agency action that it is

*required to take.*" *Otoe-Missouria Tribe of Oklahoma v. Kempthorne*, 542 U.S. 55, 64 (2004) (emphasis in original).

But for the claim that the Federal Defendants have failed to provide the accounting and audits required by law, discussed below, the plaintiffs have failed to sufficiently specify any challenged agency actions or inactions, despite having been given repeated opportunities to do so. Plaintiffs' allegations of agency actions and inactions, made "[u]pon information and belief." are general, speculative, and unspecific.[4] As such, the allegations fail to provide a sufficient focus for judicial review. Insofar as the Court ordered a more definite statement on two previous occasions and plaintiffs have failed to do so sufficiently, the plaintiffs' Third Claim for Relief (but for the claim that the Federal Defendants have failed to provide accounting and audits required by law) is stricken pursuant to Rule 12(e).

## VI. The Accounting Claims

### A.  Trust Relationship

The Federal Defendants argue plaintiffs have not stated a claim for an accounting because there is no trust relationship between headright owners and the Federal Defendants. This Court rejects the Government's argument for the following reasons:

First, the 1906 Act clearly establishes a trust relationship between the United States and members of the Osage tribe:

> "the royalty received from oil, gas, coal, and other mineral leases upon the lands . . . shall be placed in the Treasury of the United States to the credit of the members

---

[4] For instance, plaintiffs allege, upon information and belief, that the Federal Defendants have "[a]pproved certain 'family settlement agreements' in the course of contested probates contrary to the explicit directives in Osage Indian wills, which has resulted in the alienation of Section 4 royalty interests in favor of non-Indians and the diminishment of the Osage mineral estate." Plaintiffs have not alleged any specific circumstance in which such conduct allegedly took place. Moreover, Section 5 of the 1978 Act requires public notice of hearings as to the validity of the will of any Osage Indian and a method of appeal. The plaintiffs' "catch-all collateral attack" on such decisions is not the proper mechanism by which to challenge such unspecified actions.

> of the Osage tribe of Indians as other moneys of said tribe are to be deposited under the provisions of this Act, and the same shall be distributed to the individual members of said Osage tribe[5] according to the roll provided for herein, in the manner and at the same time that payments are made of interest on other moneys held in trust for the Osages by the United States."

Act of June 28, 1906, ch. 3572, 34 Stat. 539, Sec. 4 (Second).  Congress expressly accepted a trust relationship with headright owners because headright payments are to be made "in the manner and at the same time that payments are made of interest on other moneys held in trust for the Osages by the United States."

Second, the Tenth Circuit recognized long ago that a trust relationship exists between the United States Government and members of the Osage Tribe.  In *Chouteau v. Comm'r of Int. Revenue*, 38 F.2d 976, 978 (10th Cir. 1930), the Court stated:  "The mineral reserves under the [Osage] lands are held in trust by the United States for the tribe *and its members*, and are being developed under its control and direction as an instrumentality for the best interests and advancement of the members of the tribe who are still recognized as dependents on Governmental care."  (emphasis added).

Third, the United States Court of Federal Claims has recognized that the 1906 Act creates a trust fund for the Tribe and "obliges the United States to hold mineral royalties in trust for 'members of the Osage tribe.'"  *Osage Nation v. U.S.*, 57 Fed. Cl. 392, 395 (2003) (*Osage I*)[6], citing §§ 4(1) and 4(2) of the 1906 Act.

---

[5] The "members of the Osage tribe" referenced in the 1906 Act are the members listed on the tribal roll mandated by the Act.  Today, headright owners have succeeded to the interests of the original "members of said Osage tribe" referenced in the 1906 Act.

[6] It should be noted that the trust relationship between the federal government and Osage headright owners differs from the trust relationship between the federal government and the Osage Nation.  In *Osage I*, the Federal Court of Claims found that the Osage Nation has both an interest in and a claim to the mineral royalty funds "when those funds are within the tribal trust account that was established by the 1906 Act."  *Osage I*, 57 Fed. Cl. at 395.  In contrast with the claims made in this case, the mismanagement alleged by the Osage Nation was not alleged to have taken place at the point of distribution to the individual headright holders.  *Id.*

The nature of the trust relationship between the United States Government and headright owners is defined by the Osage Allotment Act and amendments thereto. In a recent case involving the Jicarilla Apache Nation, the U.S. Supreme Court stated:

> "[T]he applicable statutes and regulations 'establish [the] fiduciary relationship and define the contours of the United States' fiduciary responsibilities.' When 'the Tribe cannot identify a specific, applicable, trust-creating statute or regulation that the Government violated, . . . neither the Government's 'control' over [Indian assets] nor common-law trust principles matter.' The Government assumes Indian trust responsibilities only to the extent it expressly accepts those responsibilities by statute."

*U.S. v. Jicarilla Apache Nation*, 131 S.Ct. 2313, 2325 (2011) (internal citations omitted). "Throughout the history of the Indian trust relationship, [the Supreme Court has] recognized that the organization and management of [a statutory Indian] trust is a sovereign function subject to the plenary authority of Congress." *U.S. v. Jicarilla Apache Nation*, 131 S.Ct. 2313, 2323 (2011). "[T]he Government has often structured the trust relationship to pursue its own policy goals. Thus, while trust administration 'relat[es] to the welfare of the Indians, the maintenance of the limitations which Congress has prescribed as a part of its plan of distribution is distinctly an interest of the United States.'" *Id.* at 2324. The Supreme Court recognizes that, "[i]n some cases, Congress established only a limited trust relationship to serve a narrow purpose." *Id.* at 2324-25.

The 1906 Act requires the Government to make royalty payments "in the manner and at the same time that payments are made of interest on other moneys held in trust for the Osages by the United States." At the least, the 1906 Act imposes a trust obligation upon the Federal Defendants to distribute royalty payments to headright owners in a timely and proper manner.

This Court must therefore reject the Federal Defendants' contention that they have no trust obligations to headright owners.[7]

## B.  Statutory Bases for an Accounting

To establish that an agency was required to provide the plaintiffs with an accounting, plaintiffs must "identify a legal obligation imposed on Defendants to account for the funds held in trust." *Otoe-Missouria Tribe of Oklahoma v. Kempthorne*, 2008 WL 5205191, *2 (W.D. Okla. 2008).

In the Third Amended Complaint, plaintiffs allege they are entitled to an accounting pursuant to 25 U.S.C. §§ 162a and 4011.[8] (Dkt. #985-1, p.26, ¶ 46 .   By its explicit terms, Section 162a(a) applies "to the funds of the Osage Tribe of Indians, and the individual members thereof, only with respect to the deposit of such funds in banks."  None of the failures to account alleged by plaintiffs relate to the *deposit* of funds in banks.  Rather, the alleged failures to properly manage and account for monies relate to *distributions* from the Osage Mineral Estate, not deposits.  Moreover, allegations pertaining to alleged mismanagement of deposits in the Osage Mineral Estate have been resolved between the Osage Nation and the federal government in the Federal Court of Claims.

Similarly, Section 4011 imposes a requirement to account only for funds "deposited or invested pursuant to section 162a."  No such funds are implicated in this lawsuit.  Plaintiffs'

---

[7] Plaintiffs allege they"are descendants of individuals who were listed on the rolls of the Osage Tribe, and are Osage Indians."  See Third Amended Complaint, ¶ 34.  The allegation is ambiguous as to whether the plaintiffs are headright owners or not.  The Court must assume for the purposes of this motion that plaintiffs are headright owners.  If they are not, the Federal Defendants owe no trust responsibilities to them relative to headright distributions, and their claims would have to be dismissed.

[8] Plaintiffs argue in their response brief that they are also entitled to an accounting  pursuant to 25 U.S.C. § 4044. Because this alleged violation was not pleaded, the court does not consider it.  In the alternative, the court has examined § 4044 and holds that it applies only to Indian trust fund *accounts*, not to individual headright payments.

allegations of mismanagement focus on distributions. Section 4011 does not impose an obligation upon the Federal Defendants to account to the plaintiffs.

Insofar as plaintiffs allege in Paragraph 59 of the Third Amended Complaint that the Federal Defendants bear certain accounting and administrative responsibilities pursuant to Section 4 of the 1906 Act and Section 162a(d), the Court addresses those alleged responsibilities. Due to the nature of the trust relationship between the federal government and headright owners, plaintiffs' demands for an accounting or audit are misplaced. Headright owners receive quarterly payments in proportion to their fractional ownership of headrights. Plaintiffs do not allege the headright payment amounts have ever been miscalculated (as opposed to their claims that the headrights have been passed to improper individuals). Unlike the trust account held for the Osage tribe, there is no underlying trust account with a balance for headright owners to examine. Because headright owners do not have headright "accounts," it is impossible for the Government to give them access to a daily balance of an account. Headright owners are simply paid a percentage of the funds from the tribal trust account at the end of each quarter. As previously discussed, the more complex trust responsibilities such as collecting royalty payments, investing proceeds, collecting interest, and calculating disbursement amounts are all part of the federal government's trust relationship with the Osage Nation, not with the individual headright owners.[9] *Osage I*, 57 Fed. Cl. at 395. Simply put, the accounting obligations set forth in Section 162a(d) (e.g. trust fund balances, timely reconciliations, accurate cash balances, periodic

---

[9] The revenues generated from the Osage Mineral Estate are "deposited first in the tribal trust fund account where they remain for 'approximately one calendar quarter' before being distributed to the headright owners." *Osage I*, 57 Fed. Cl. at 395. "[T]he funds that are distributed to the headright owners from the tribal trust fund are 'net of a small portion retained for the Osage Tribal operations and a portion paid for the Oklahoma gross receipts tax' . . . the additional step of determining what amount is owed to each headright holder also takes place while the funds are in the tribal trust fund." *Id.* "The responsibility of the government is to the tribal trust fund account. The tribal trust fund is then responsible for the ultimate distribution to the individual headright owners." *Id.*

statements to account holders of account performance) have no application to the unique relationship between the federal government and headright owners.

## IV. Conclusion

The court dismisses the portions of plaintiffs' claims for relief that allege improper distributions to non-Osage headright owners for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6). The dismissal is without prejudice. In the alternative, and pursuant to Rule 12(e), the Court strikes all of plaintiffs' Third Claim for Relief but for the claim that the Federal Defendants have failed to provide accounting and audits required by law. The plaintiffs' accounting claims are dismissed for the reasons set forth above.

WHEREFORE, the Motion to Dismiss of defendants the United States of America, the Department of the Interior, Kenneth Salazar in his official capacity as Secretary of the Interior, the Bureau of Indian Affairs, and Larry EchoHawk in his official capacity as Assistant Secretary of the Interior–Indian Affairs [Dkt. #1126] is granted.

DATED this 31st day of March 2012.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT