IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLIAM S. FLETCHER, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 02-CV-427-GKF-PJC |
| ) | |
| THE UNITED STATES OF AMERICA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Before the court are the Motion to Alter or Amend the Judgment [Dkt. #1289] filed by plaintiffs William S. Fletcher et al., and the Motion to Alter or Amend the Judgment [Dkt. #1285] filed by defendants the United States of America, the Department of Interior, Sally Jewell in her official capacity as Secretary of the Interior, the Bureau of Indian Affairs, and Larry Roberts in his official capacity as Acting Assistant Secretary of the Interior–Indian Affairs (collectively, "the government").

On December 30, 2015, the court entered an order and judgment directing the government to provide plaintiffs with an accounting of the Osage tribal trust account meeting certain set requirements. Both parties now request that the court amend those requirements. For the reasons set forth in this Opinion and Order, the court grants the government's motion and grants in part and denies in part the plaintiffs' motion.

**I. Background**

In the early twentieth century, large quantities of oil and gas were discovered on lands belonging to the Osage Nation. Shortly thereafter, Congress enacted the Osage Allotment Act of 1906, *see* Act of June 28, 1906, Pub. L. No. 59–321, 34 Stat. 539 ("Osage Allotment Act" or "1906 Act"), which severed the mineral estate underlying Osage lands from the surface estate,

placed the mineral estate in trust, and directed the Secretary of Interior to collect and distribute royalty income every quarter to persons on the 1906 tribal membership roll. The right to receive quarterly trust distributions is referred to as a "headright." *Taylor v. Tayrien*, 51 F.2d 884, 886 (10th Cir. 1931). Under the 1906 Act, there are 2,229 headrights—one for each person on the 1906 tribal membership roll. *See Big Eagle v. United States*, 300 F.2d 765, 765 (Ct. Cl. 1962); *see also* 1906 Act §§ 1, 4. Today, "[m]ost persons of Osage Indian ancestry own no headrights, and thus receive no tribal income. Some persons own more than one headright, or own fractional shares of headrights, and some headrights are owned by non-Osages." *See* Cohen's Handbook of Federal Indian Law § 4.07[1][d][ii], at 313 (Neal Jessup et al., eds., 2005).

Prior to distribution, royalty income collected under the 1906 Act is held in a United States Treasury account, titled the Osage tribal trust account. The tribal trust account "was established by the 1906 Act," *Osage Tribe of Indians of Okla. v. United States*, 81 Fed. Cl. 340, 348 (2008), and is the means by which the government carries out its duties to collect, hold, and distribute funds pursuant thereto, [*see* Dkt. #1212-1, Administrative Record, p. 2].

Plaintiffs are Osage Indians who receive headright payments pursuant to the 1906 Act. In their Third Amended Complaint, they requested various forms of relief, including an "accounting . . . of the Section 4 Royalty Payments distributed from the Osage Mineral Estate" as well as "[a]n order requiring that such accounting . . . determine whether Section 4 Royalty Payments . . . have been distributed only to Osage Indians (and their heirs) as required by section 4 of the 1906 Act." [*See* Dkt. #985-1, p. 33].[1] On December 30, 2015, the court entered an

---

[1] Plaintiffs first sought this accounting in 2006, as part of their First Amended Complaint. [*See* Dkt. #24, pp. 11-12 (requesting the same sort of accounting)].

order and judgment directing the government to provide plaintiffs with an accounting of the tribal trust account in accordance with the following requirements:

1. The accounting must run from the first quarter of 2002 until the last available quarter;
2. The accounting must be divided and organized either by month or by quarter;
3. The accounting must state the date and dollar amount of each receipt and distribution;
4. The accounting must briefly identify and describe the source of each trust receipt (i.e., the name of the payer/lessee and the contract number for the oil and/or gas lease on which the payment is made);
5. The accounting must state the name of the individual or organization to whom each trust distribution was made;
6. For headright distributions, the accounting must state the headright interest that each beneficiary possessed at the time of distribution;
7. The accounting must state the amount of interest income generated from the tribal trust account and the date on which such interest was credited to the account.

[Dkt. #1280, p. 26-27].  The court allowed the government six months from either the entry of judgment or the conclusion of any appeal, whichever was later, to comply with the court's accounting order.  [Dkt. #1281, p. 2].

## II. Discussion

Both parties now move the court to amend its accounting order under Rule 59(e). "Grounds warranting a Rule 59(e) motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1212 (10th Cir. 2012) (alterations omitted) (internal quotation marks omitted). Such a motion "is appropriate where the court has misapprehended the facts, a party's position, or the controlling law.  It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citation omitted).

The parties each move to amend different aspects of the court's judgment. The court addresses the parties' motions separately.

A. The Government's Motion

In its motion, the government requests either more time to comply with the court's accounting order or permission to provide identifying information for trust receipts other than the contract number on which the payment was made. According to the government, it currently does not have available the contract or lease number for all trust receipts dating back to 2002. It estimates that retrieving such information will require at least eighteen (18) months. In response, plaintiffs do not object to allowing the government more time to comply with the court's order, but *do* object to the use of any other form of identifying information as a substitute for the contract or lease number. [Dkt. #1295, p.1].[2]

The court has reviewed the parties' filings and agrees that an extension of time is warranted. The court, therefore, amends the judgment to allow the government eighteen (18) months to comply with the court's accounting order.

---

[2] Plaintiffs' response brief is not entirely clear. Although it states that plaintiffs "have no objection to a reasonable amount of additional time for the United States to identify the lease number associated with each payment," it later "suggest[s] that the Court might permit the United States at most until the end of June to complete the work needed." [Dkt. #1295, p. 1, 3]. It follows up this suggestion by stating that a June deadline will give the government "the 6 months [it] seeks." [*Id.* at 3]. It is unclear from these statements whether plaintiffs mean June 2016 or June 2017—the first option does not provide the government with any additional time whereas the second provides the government with well over six months additional time. Given this confusion, the court will fall back on plaintiffs' general statement that they "have no objection to [providing the government with] a reasonable amount of additional time," and grant the government's request for eighteen (18) months to comply with the court's accounting order.

B.  The Plaintiffs' Motion

The court now turns to the plaintiffs' motion.  Plaintiffs move to amend two aspects of the court's judgment.  First, they seek to significantly broaden the scope of the court's accounting order.  Second, they request that the deadline for complying with the court's order run from the entry of judgment only, rather than the conclusion of any appeal—a provision which they characterize as a "pre-granted" stay.  The court addresses these issues in turn.

Plaintiffs first request that the court significantly expand the temporal scope and level of detail required by its accounting order.  In molding the scope of the accounting due, the court relied heavily on plaintiffs' stated reason for seeking an accounting and the specifics of their prior requests.  In particular, the court noted that "plaintiffs' stated purpose for seeking an accounting [was] to obtain information that w[ould] enable them to prove that the government has paid headright distributions to ineligible recipients," and that "[o]riginally, plaintiffs only requested an accounting of trust *distributions* going back to 2002."  [Dkt. 1280, Opinion and Order, p. 21-22 (emphasis added); *see also id.* at 21 n.12 (collecting instances in which plaintiffs stated that their reason for seeking an accounting was to pursue their misdistribution claim); *id.* at 22 n.13 (collecting instances in which plaintiffs stated that they were only seeking an accounting of trust distributions going back to 2002)].  With these objectives in mind, the court proceeded to mold an accounting reasonably calculated to get at this information without imposing gratuitous costs on the government.

Plaintiffs now contend that the court's reliance of their prior representations as a benchmark for shaping the accounting due was improper.  They contend that their misdistribution claim is no longer part of this litigation and, consequently, that it should not factor into court's accounting order.  Notably, plaintiffs do not propose an alternative benchmark

or objective for shaping the court's order.  Rather, they seek an accounting going back to the "earliest possible date" and containing detailed information about both trust distributions *and* receipts.  In response, the government maintains that that the court has already addressed the plaintiffs' arguments and that they have not identified any grounds warranting Rule 59 relief.

The court agrees with the government.  As set forth in its prior order, the court has already considered and rejected the plaintiffs' request for an accounting "unmoored from the original purpose for which [it] was sought." [*Id.* at 23].  Plaintiffs' latest argument—that the dismissal of their misdistribution claim somehow entitles them to an accounting more expansive than they originally requested—is unpersuasive.  Although the court previously dismissed plaintiffs' misdistribution claim, that dismissal was based on the lack of specific factual allegations in their complaint and thus was without prejudice.  [Dkt. #1162, p. 14].  Notably, *following this dismissal*, plaintiffs repeatedly told the Tenth Circuit that their reason for seeking an accounting was to determine whether the government had paid headright distributions to ineligible recipients—that is, to investigate and pursue their misdistribution claim.[3]  Given this

---

[3] [*See* Dkt. #1219-3, Tenth Circuit Oral Argument Transcript, p. 16-17 ("JUDGE: So what is it you want beyond a list of current recipients or would that do the trick? …. MR. AAMODT: … I think the answer, your Honor, would be that the United States must demonstrate through the records that it has, that it has in good faith paid the right people the right amount of money."); *id.* at 35 ("What we're looking for is with respect to the payments that are being made, whether or not they are being made to persons that the United States now can say that they understand that they're making them to the right people." (statement of Jason B. Aamodt, plaintiffs' counsel)); *id.* at 36 ("*I think upon receiving the accounting that my clients are due, they may challenge the bona fides of particular individuals.*" (statement of Aamodt) (emphasis added)); Brief of Plaintiff-Appellant at 24-25, *Fletcher v. United States*, 730 F.3d 1206 (10th Cir. 2013) (No. 12–5078), 2011 WL 8968328 ("Specifically, Plaintiffs seek an accounting relating to whether the United States has properly distributed headright payments only to those who may rightfully hold a headright, whether interest was collected and distributed, and whether the correct amounts were distributed to the correct recipients.")]; *see also Fletcher*, 730 F.3d at 1215 ("We don't doubt that the plaintiffs ultimately hope to prove that the government has sent money to persons

procedural history, it is unclear why (all of the sudden) the dismissal of that claim now requires the court to ignore plaintiffs' repeatedly stated purpose for seeking an accounting. The court does not believe that it does.

To the extent that plaintiffs simply ask the court to disregard their earlier statements and grant an accounting unmoored from any benchmark or objective, the court again declines to do so. The Tenth Circuit has stated that this court has "considerable discretion" to mold the nature and scope of the accounting "in ways designed to get the plaintiffs what they need most without imposing gratuitous costs on the government." *Fletcher v. United States*, 730 F.3d 1206, 1214 (10th Cir. 2013). That is what the court has endeavored to do here. Plaintiffs' proposed accounting is not tied to any clear objective and, in the court's view, is precisely the sort of "green eye-shade death march" that the Tenth Circuit warned this court to avoid. *See id.* Plaintiffs have not identified any defect in the court's accounting order warranting Rule 59 relief. Accordingly, their request to expand the scope of that order is denied.

Plaintiffs next request that the court eliminate the "pre-granted" stay pending appeal set forth in the court's judgment. They contend that a stay pending appeal is not automatic and that the party requesting such relief bears the burden of establishing its entitlement thereto. The government does not specifically respond to this aspect of the plaintiffs' motion.

The power of this court to grant a stay pending appeal is governed by Federal Rule of Civil Procedure 62(c). *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). In addressing a motion under this rule, the court considers the following factors:

---

ineligible to receive headright shares under the various amendments to the 1906 Act—and, in this way, improperly diminished their pro rata share.").

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* The burden is on the party requesting a stay to establish their entitlement to such relief. *See Nken v. Holder*, 129 S. Ct. 1749, 1761 (2009); *McCammon v. United States*, 584 F. Supp. 2d 193, 197 (D.D.C. 2008) (noting "that granting a stay pending appeal is always an extraordinary remedy, and that the moving party carries a heavy burden to demonstrate that the stay is warranted" (internal quotation marks omitted)).

In light of this authority, the court agrees with the plaintiffs. "A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right . . . ." *Nken*, 129 S. Ct. at 1757 (citation omitted) (internal quotation marks omitted). The government has not moved for a stay pending appeal, and the circumstances here are not so extreme as to warrant the court's granting of such relief on its own initiative. The court, therefore, amends the judgment to eliminate any stay of the court's order.

WHEREFORE, the government's Motion to Alter or Amend the Judgment [Dkt. #1285] is granted, and the plaintiffs' Motion to Alter or Amend the Judgment [Dkt. #1289] is granted in part and denied in part. The plaintiffs' motion is granted with respect to the deletion of the judgment's stay pending appeal and denied to the extent it seeks modification of the court's accounting order.

The judgment is hereby amended to allow the government eighteen (18) months from the filing of the amended judgment to comply with the court's accounting order.

IT IS SO ORDERED this 11th day of March, 2016.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT